JORDAN, Circuit Judge,
concurring:
I agree that there is an issue of material fact as to whether Mr. Rodriguez suffered an adverse employment action, and generally concur in the majority’s discussion of why that is so. But I would not be so quick to dismiss the termination letter that Chief Gomez handed to Mr. Rodriguez on January 29,2009.
“[T]he issue of whether an actual termination has occurred is determined in light of the particular circumstances of the controverted job action.” Thomas v. Dillard Dept. Stores, Inc., 116 F.3d 1432, 1434 (11th Cir. 1997). The first paragraph of the letter, signed by the City Manager, was unmistakably direct and unqualified: “Please be advised that effective immediately, your employment with the City of Doral is hereby terminated.” D.E. 85-3. In Doral the City Manager has the power to hire and fire, see D.E. 87-1 at 22, and when an employer tells an at-will employee that he is discharged “effective immediately,” that can only be understood by a reasonable person to mean that employment is over the instant the decision is communicated. See, e.g., The American Heritage Dictionary of the English Language 877 (4th ed. 2009) (defining “immediately” as “without delay”). At the very least, a reasonable jury could find that the delivery of the letter ended Mr. Rodriguez’s job. Cf. Smith v. Brantley, 400 So.2d 443, 444 (Fla. 1981) (“a public officer’s resignation, stated to be effective immediately, is effective *1355 upon submission to the proper authority”). And if the letter terminated his employment with the City, how could Mr. Rodriguez subsequently resign from a non-existent position?
The majority says that everything that happened after Mr. Rodriguez was given the letter by Chief Gomez (including Mr. Rodriguez’s subsequent decision to resign) shows that the letter did not constitute a termination. See Maj. Op. at 1352.1 am not sure, however, that we can make such a blanket determination on this record and would allow the jury to decide the effect of the letter.
According to the City, Mr. Rodriguez requested the option of resigning instead of being terminated, and once he chose resignation, Chief Gomez called the City Manager and obtained approval for the resignation. See D.E. 97-7 at 11; D.E. 83-2 at ¶ 13; D.E. 82 at ¶¶ 29-30. But Mr. Rodriguez had a different version of events. Mr. Rodriguez testified that he did not make the initial request to resign, and that it was Chief Gomez who offered him the option of resigning right after handing him the termination letter, apparently without seeking or obtaining the City Manager’s approval. See D.E. 122-1 at 4 (“He then gave me the option to either resign or to be terminated. He gave me five minutes to think about it.”); D.E. 97-1 at ¶ 15 (“After having terminated me, Chief Gomez gave me the option to resign instead and gave me five minutes to go out and think about it.”).
At summary judgment, we have to accept Mr. Rodriguez’s version of events, as well as the reasonable inferences that can be drawn from it, so I do not think it is possible to say definitively that Chief Gomez had the City Manager’s approval when he offered Mr. Rodriguez the option of resigning. If a jury were to find that Chief Gomez did not have the City Manager’s blessing, then maybe everything that took place after the delivery of the letter to Mr. Rodriguez was just “sound and fury, [signifying nothing.” William Shakespeare, The Tragedy of Macbeth, Act V, scene 5 (1606).